IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARDAMIS DARRELL SIMS, #K-81548, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 20-cv-336-MAB |
| ) | |
| SCOTT THOMPSON, W. HARRIS, ) | |
| DAVID HESS, JR., AFFTON HAGGARD, ) | |
| AMBER LOOS, J. SMITH, ) | |
| SHANE MERCIER, MS. DEMSAR, ) | |
| TRAVIS BAYLER,  LT. MILLER, ) | |
| IDOC, CHALENE HALE, ) | |
| and ROBERT J. SAMOLINSKI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Ardamis Darrell Sims was an inmate of the Illinois Department of Corrections ("IDOC") incarcerated at Danville Correctional Center ("Danville") at the time he filed this lawsuit pursuant to 42 U.S.C. § 1983. He alleges deprivations of his constitutional rights while he was confined at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 10). Plaintiff was recently released from custody. (Doc. 12).

The Court dismissed Plaintiff's original Complaint (Doc. 1) as duplicative of another pending action[1] and for failure to state a claim upon which relief may be granted. (Doc. 9). Plaintiff's First Amended Complaint is now before the Court for a preliminary

---

[1] *Sims v. Varel, et. al*, Case No. 20-335-GCS, which is proceeding in this district on medical-care-related claims.

merits review under 28 U.S.C. § 1915A,[2] which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## THE FIRST AMENDED COMPLAINT

Plaintiff makes the following allegations in the First Amended Complaint (Doc. 10): He was housed at Pinckneyville from March 29, 2018 to June 6, 2019. During that time, he was fed moldy, contaminated, undercooked, and expired food in the dietary department on several occasions, which made him sick. Plaintiff alerted Lt. J. Smith on September 7, 2018 about moldy food on his tray, but Smith did nothing more than tell Plaintiff he could dump out his tray. (Doc. 10-1, pp. 3-4).

Plaintiff filed a grievance that was delayed and denied by Counselor David Hess, who falsely replied that moldy items and out-of-date donated food are not served at the prison. (Doc. 10-1, p. 4). Food Supervisor W. Harris falsely denied the claims of unsanitary kitchen practices in Plaintiff's grievances, which included a broken dishwasher and workers not wearing aprons or beard/hair nets. (Doc. 10-1, p. 5). Administrative Review Board Acting Director Travis Bayler denied Plaintiff's grievances and referred him to health care to address his medical concerns. *Id.*

Hess, Bayler, Grievance Officer Shayne Mercier, and Counselor Amber Loos

---

[2] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge, and the limited consent by the Illinois Department of Corrections to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

mishandled Plaintiff's grievances, causing them to be denied as untimely. (Doc. 10-1, pp. 6-7). Harris and Hess blamed Plaintiff's illness on his failure to follow dietary recommendations for treatment of H. Pylori symptoms, indicating they saw his medical records without his permission. (Doc. 10-1, pp. 7-8).

Counselor Affton Haggard falsified a grievance response after Plaintiff complained on May 22, 2019 about an undercooked and contaminated chicken patty that made him extremely ill. (Doc. 10-1, pp. 8-9). Plaintiff was ill for half a year from the tainted food. He filed a grievance with Counselor Chalene Hale over Haggard's falsification of reports, but Hale responded he could not grieve that issue.

Loos responded on April 8, 2019 to Plaintiff's grievance that food trays were contaminated with slimy grime and were falling apart, admitting that trays are being replaced but denying the grievance. (Doc. 10-1, p. 9). Plaintiff also told Counselor Robert Samolinski about the dirty trays. (Doc. 10-2, p. 1).

Plaintiff complained to Samolinski in March, June, and July 2019, that he was being denied showers. (Doc. 10-1, p. 9). He claims he was "harass[ed] regularly" by being denied showers, phone access, and dayroom and recreation access. (Doc. 10-2, p. 1). Plaintiff does not identify the officers who were responsible for these denials, stating that they did not wear name plates, or they put their nametag on a belt where they could not be read. (Doc. 10-2, p. 1). Plaintiff asserts he was denied showers, recreation, and phones because he filed grievances against officers for reading his mail. (Doc. 10-2, p. 2). Plaintiff mentions C/O Bathom, C/O Ms. Johnson, and Major Adams in connection with this claim, but does not include these individuals as Defendants herein. (Doc. 10-2, pp. 1-3).

Hess refused to deliver grievances to Plaintiff and refused to process his grievances. Plaintiff wrote to Warden Scott Thompson about the harassment and denial of privileges, but Thompson deemed the matter to be non-emergency. (Doc. 10-2, p. 2). Thompson and Bayler denied his grievances on these issues. *Id.*

Plaintiff asserts that Defendants Hess, Haggard, Loos, Mercier, Hale, Thompson, Bayler, Harris, Miller, Demsar, and Samolinski were all aware of the false, fabricated reports that were used to deny his grievances and refused to address the problems in dietary. (Doc. 10-1, p. 5). He asserts Eighth Amendment and retaliation claims against them, as well as state law negligence and intentional infliction of emotional distress claims. (Doc. 10-2, pp. 3-4). Plaintiff seeks monetary damages. (Doc. 10-2, p. 5).

## PRELIMINARY DISMISSALS

The only allegations Plaintiff raises against Hess, Haggard, Loos, Mercier, Bayler, and Hale are that these officials denied, mishandled, or provided false information in response to his grievances over tainted food and unsanitary kitchen practices. The denial or mishandling of a grievance does not amount to a constitutional violation. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Because these Defendants were only involved in processing Plaintiff's grievances, the claims against Hess, Haggard, Loos, Mercier, Bayler, and Hale are **DISMISSED without prejudice**.

Plaintiff does not set forth any factual allegations against Lt. Miller and merely

4

states that he was aware of the false and fabricated reports that led to the denial of Plaintiff's grievances, and that he failed to address the problems in dietary. (Doc. 10-1, p. 5). This conclusory statement is insufficient to state a claim against Lt. Miller and he is also **DISMISSED without prejudice**.

Plaintiff includes the IDOC as a Defendant and suggests the agency should be liable because it employs the individual Defendants. (Doc. 10-1, p. 7; 10-2 p. 3). Regardless of his theory of liability, Plaintiff cannot maintain a suit for money damages against the IDOC, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). The IDOC is also **dismissed** from the action.

## DISCUSSION

Based on the allegations in the First Amended Complaint, the Court designates the following claims in this *pro se* action:

Count 1:   Eighth Amendment deliberate indifference claim against Harris, Demsar, Smith, Samolinski, and Thompson for serving Plaintiff tainted food which caused him to become ill and/or failing to correct the sanitation and food quality problems after Plaintiff complained and/or filed grievances.

Count 2:   First Amendment retaliation claim against Samolinski and Thompson for depriving Plaintiff of privileges including showers, phone access, recreation, and dayroom because

5

>> Plaintiff filed grievances against officers who read his mail.

> Count 3: Illinois state law negligence and intentional infliction of emotional distress claims based on the tainted food complaints set forth in Count 1.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

### Count 1

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on an Eighth Amendment deliberate indifference claim, Plaintiff must show that the deprivation was objectively serious and created an excessive risk to his health or safety, and that the defendant(s) knew of the risk of harm but acted or failed to act despite that knowledge. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

According to Plaintiff's factual allegations, only two Defendants (Manager/Food

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

Supervisor Harris and Food Supervisor Demsar) were directly involved in food preparation or management of the food service at Pinckneyville. Plaintiff has alleged substantial harm (repeated and/or lengthy illness) related to food quality and kitchen sanitation at Pinckeyville, sufficient at this stage to meet the objective component of a deliberate indifference claim. If Harris and/or Demsar knowingly served tainted food to Plaintiff or failed to take steps to mitigate the risk from outdated/unsafe food or unsanitary kitchen practices, they could be found to be in violation of the Eighth Amendment. Count 1 may therefore proceed against Harris and Demsar.

Plaintiff describes only one interaction with Lt. J. Smith regarding the food issue. He showed Smith some moldy food on his tray and Smith gave Plaintiff permission to dump out the tray and return to his seat. (Doc. 10-1, pp. 3-4). This single incident does not amount to a serious deprivation of nourishment or a substantial threat to Plaintiff's health, and Smith's mere observation of the moldy food is insufficient to impose liability upon him. Lt. Smith is therefore dismissed from Count 1 and from the action.

Similarly, Plaintiff states that he told Counselor Samolinski about the contaminated/dirty food trays. However, he does not indicate that he informed Samolinski about the problem on more than one occasion, nor does he allege that Samolinski had any responsibility for the issue other than addressing Plaintiff's grievance/complaint as a Counselor. (Doc. 10-1, pp. 2, 9; Doc. 10-2, p. 1). As noted above, an official whose involvement is limited to responding to grievances does not become responsible for the alleged constitutional violation that gave rise to the grievance. *Owens*, 635 F.3d at 953. Samolinski is also dismissed from Count 1.

The only connection Plaintiff makes between Warden Thompson and the tainted food allegations is Thompson's denial of Plaintiff's grievances. This is insufficient to state a constitutional claim and Count 1 is therefore dismissed against Thompson.

To summarize, Count 1 shall proceed only against Defendants Harris and Demsar.

**Count 2**

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff sets forth a chronology that could support a First Amendment retaliation claim – he filed grievances accusing officials of reading his mail, and then officers deprived him of showers and access to recreation and telephones. However, Plaintiff's statement of claim never identifies the officials who committed the retaliatory acts, nor does he name the officials against whom he lodged the complaints which allegedly triggered the retaliation. He must identify the people who retaliated and include them as Defendants[4] before this claim may proceed.

Plaintiff's description of the alleged retaliation mentions C/O Bathom, C/O Ms.

---

[4] Plaintiff may designate unknown Defendants as "John/Jane Doe" but must include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

Johnson, and Major Adams, however, he did not include these individuals as Defendants in this action, nor did he make clear what actions they allegedly took against him. (Doc. 10-2, pp. 1-3). When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

The only Defendants mentioned in this section of the pleading are Samolinski and Thompson. Plaintiff says he told Samolinski that he had been denied showers (Doc. 10-1, p. 9). He wrote to Thompson describing the harassment and denial of privileges, but Thompson denied the issues as non-emergency. (Doc. 10-2, p. 2). These facts demonstrate that Samolinski and Thompson did not themselves engage in retaliation against Plaintiff, but merely responded to his grievances/complaints – which does not amount to a violation of his constitutional rights. *Owens*, 635 F.3d at 953. Thompson and Samolinski are therefore dismissed from Count 2.

Because Plaintiff did not include as Defendants the officers who retaliated against him, Count 2 will be dismissed without prejudice. Plaintiff may seek leave to submit yet another amended complaint if he wishes to further pursue this claim. However, the retaliation claim in Count 2 does not appear to be related to the tainted food claims in Count 1. This means that if Plaintiff re-pleads Count 2 in this action, the Court may sever that claim from this case into a *new* action, which would require a separate filing fee.

**Count 3**

Under Illinois law, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Because Count 1 for deliberate indifference survives against Harris and Demsar, Plaintiff may also pursue his state law negligence claims against these two Defendants based on the same facts underlying Count 1.

The tort of intentional infliction of emotional distress under Illinois law covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion … calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla. 1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at

490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

If Plaintiff can prove that Harris and/or Demsar knowingly served dangerous tainted or improperly prepared food, he may be able to prevail on the claim for intentional infliction of emotional distress. At this early stage, this claim is not subject to dismissal.

Count 3 may proceed against Harris and Demsar on the negligence and intentional infliction of emotional distress state law claims.

### DISPOSITION

**IT IS HEREBY ORDERED** that **COUNT 2** is dismissed without prejudice. Defendants **THOMPSON, HESS, HAGGARD, LOOS, SMITH, MERCIER, BAYLER, MILLER, HALE,** and **SAMOLINSKI** are **DISMISSED** from this action without prejudice. Defendant **IDOC** is **DISMISSED** from this action **with prejudice**.

**IT IS FURTHER ORDERED** that **COUNTS 1 and 3** against W. Harris and Ms. Demsar survive preliminary review pursuant to 28 U.S.C. § 1915A and shall proceed for further consideration.

The Clerk of Court shall prepare for Defendants **HARRIS** and **DEMSAR**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment

as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: March 31, 2021**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.